1 | DANIEL G. BOGDEN
United States Attorney

2 | JAMES E. KELLER
Assistant United States Attorney

3 | 100 West Liberty Street, Suite 600
Reno, Nevada 89501

4 | (775) 784-5438

5 | Attorneys for Plaintiff



```
_____ FILED        _____ RECEIVED
_____ ENTERED      _____ SERVED ON
            COUNSEL/PARTIES OF RECORD

            JUL 2 4 2014

        CLERK US DISTRICT COURT
         DISTRICT OF NEVADA
BY:_____ DEPUTY
```

6 | UNITED STATES DISTRICT COURT

7 | DISTRICT OF NEVADA

8 | UNITED STATES OF AMERICA,

9 |            Plaintiff,

10 |    v.

11 | NICHOLAS COLLADO,

12 |            Defendant.

Case No. 2:12-CR-00478-JAD-VCF

**PLEA AGREEMENT UNDER
FED. R. CRIM. P. 11 (c)(1)(A) and (B)**

13 |

14 |      Plaintiff United States of America, by and through DANIEL G. BOGDEN, United States

15 | Attorney, and JAMES E. KELLER, Assistant United States Attorney, the defendant NICHOLAS

16 | COLLADO and the defendant's attorney, GABRIEL GRASSO, ESQ., submit this Plea Agreement

17 | under Fed. R. Crim. P. 11(c)(1)(A and B).

18 | **I.**     **SCOPE OF AGREEMENT**

19 |      The parties to this Plea Agreement are the United States of America and NICHOLAS

20 | COLLADO, the defendant.   This Plea Agreement binds the defendant and the United States

21 | Attorney's Office for the District of Nevada.  It does not bind any other prosecuting, administrative, or

22 | regulatory authority, the United States Probation Office, or the Court.

23 |      The Plea Agreement sets forth the parties' agreement regarding criminal charge referenced in

24 | the Plea Agreement and applicable sentences, fines, restitution and forfeiture.  It does not control or

prohibit the United States or any agency or third party from seeking any other civil or administrative remedies directly or indirectly against the defendant.

## II.   DISPOSITION OF CHARGES AND WAIVER OF TRIAL RIGHTS

A.   <u>Guilty Plea</u>.   The defendant knowingly and voluntarily agrees to plead guilty to the following charge as set forth in the Third Superseding Indictment returned by the grand jury on October 30, 2013.

<u>Count 1</u>: Conspiracy to Possess with Intent to Distribute and Distribute a Controlled Substance and Controlled Substance Analogue, in violation of 21 U.S.C. §§ 802(32)(A), 813, 841(a)(1) and (b)(1)(C), and 846.

B.   <u>Waiver of Trial Rights</u>.   The defendant acknowledges that he has been advised and understands that by entering a plea of guilty he is waiving -- that is, giving up -- certain rights guaranteed to all defendants by the laws and the Constitution of the United States.  Specifically, the defendant is giving up:

1.   The right to proceed to trial by jury on all charges, or to a trial by a judge if the defendant and the United States both agree;

2.   The right to confront the witnesses against the defendant at such a trial, and to cross-examine them;

3.   The right to remain silent at such a trial, with assurance that his silence could not be used against him in any way;

4.   The right to testify in his own defense at such a trial if he so chooses;

5.   The right to compel witnesses to appear at such a trial and testify in the defendant's behalf; and

6.   The right to have the assistance of an attorney at all stages of such proceedings.

C.    Withdrawal of Guilty Plea.  The defendant will not seek to withdraw his guilty plea after he has entered it in court.

D.    Additional Charges.  The United States agrees not to bring any additional charges against the defendant arising out of the investigation in the District of Nevada which culminated in this Plea Agreement and based on conduct known to the United States.

The United States will move to dismiss any other charges pending against the defendant in this case at the time of sentencing.

## III.    ELEMENTS OF THE OFFENSE

Count 1: The elements of Conspiracy to Possess with Intent to Distribute and Distribute a Controlled Substance and Controlled Substance Analogue, in violation of 21 U.S.C. §§ 802(32)(A), 813, 841(a)(1) and (b)(1)(C), and 846 are:

1.    There was an agreement between two or more persons to knowingly possess with intent to distribute and to distribute (a) a controlled substance; namely, RCS-4 and JWH-250, and (b) one or more controlled substance analogues intended for human consumption, namely, alpha-PVP, AM2201, UR-144 and XLR-11, to another person;

2.    The defendant knew the agreement had an unlawful object or purpose; and

3.    The defendant joined in the agreement with the intent to further its unlawful object or purpose.

See Ninth Cir. Manual of Model Jury Instr., Criminal § 9.19 (2010 ed.) (modified).

A "controlled substance analogue," is defined in 21 U.S.C. § 802(32)(A) as a substance:

1.    the chemical structure of which is substantially similar to that of a Schedule I or II controlled substance; and

2.    (a) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system is substantially similar to, or greater than, stimulant, depressant, or

3

1    hallucinogenic effect on the central nervous system of a controlled substance in

2    Schedule I or Schedule II, *or* (b) with respect to a particular person, which such person

3    represents or intends to have a stimulant, depressant, or hallucinogenic effect on the

4    central nervous system that is substantially similar to, or greater than the stimulant,

5    depressant, or hallucinogenic effect on the central nervous system of a controlled

6    substance in Schedule I or Schedule II.

7    *See* 21 U.S.C. § 802(32)(A).

8        A controlled substance analogue shall, to the extent intended for human consumption, be

9    treated, for the purposes of any Federal law, as a controlled substance in Schedule I.

10   *See* 21 U.S.C. § 813.

11   **IV.   FACTS SUPPORTING GUILTY PLEA**

12       A.    The defendant will plead guilty because he is, in fact and under the law, guilty of the

13   crime charged.

14       B.    The defendant acknowledges that if he elected to go to trial instead of pleading guilty,

15   the United States could prove his guilt beyond a reasonable doubt.  The defendant further

16   acknowledges that his admissions and declarations of fact set forth below satisfy every element of the

17   charged offense.

18       C.    The defendant waives any potential future claim that the facts he admitted in this Plea

19   Agreement were insufficient to satisfy the elements of the charged offense.

20       D.    The defendant admits and declares under penalty of perjury that the facts set forth

21   below are true and correct:

22       At all relevant times, the defendant operated a business with co-defendant Joshua Michael

23   Riley, known as JMR (Joshua Michael Riley) Enterprises, in Las Vegas, Nevada, and which

24   maintained a website known as thesupplyboys.com.  At all relevant times, JMR Enterprises operated

4

out of 11155 Grants Landing Court, Las Vegas, Nevada, and rented private mailbox #401 at the UPS store located at 10620 Southern Highlands Parkway, Las Vegas, Nevada.

On March 10, 2012, Department of Homeland Security (DHS) agents discovered an international package containing a suspicious substance from China, labeled "lauric acid" with a value of $10, and addressed to defendant "Nick Collado" of "JMR Enterprises" at 10620 Southern Highlands Parkway, Las Vegas, Nevada. The package was sent to a forensic lab for analysis, the results of which revealed the presence of 1,525 grams of alpha-PVP. Alpha-PVP at that time was a controlled substance analogue, as defined in 21 U.S.C. § 802(32)(A), of methylenedioxyprovalerone ("MDPV"), a cathinone and a controlled substance in Schedule I.

On June 11, 2012, as set forth in discovery, an undercover federal agent ordered synthetic cannabinoids and synthetic cathinones (colloquially referred to as "spice" and "bath salts," respectively, and reported to be ingested for physiological effects) from www.thesupplyboys.com, a website of JMR Enterprises. The undercover agent ordered an item labeled "Mad Pineapple" (spice) and an item labeled "Tiger Blood Concentrated Bath Salt" (bath salt) for $65.

On June 12, 2012, co-defendant Alvarado brought a green hamper with mail packages containing suspected spice and bath salts to the FedEx office, 7620 Las Vegas Boulevard South, Las Vegas, Nevada, for mailing, including one addressed to the undercover agent as ordered above. A couple of days later, this package addressed to the undercover agent arrived at the residence provided by the agent in California, containing the ordered packets of "Mad Pineapple" and "Tiger Blood." Subsequent laboratory testing of the substance inside the "Mad Pineapple" (spice) packet revealed the presence of AM2201, which, at that time, was a controlled substance analogue of JWH-018, a Schedule I controlled substance. Laboratory testing of the substance in the "Tiger Blood" (bath salts) packet revealed the presence of alpha-PVP, a controlled substance analogue of MDPV.

5

On July 24, 2012, co-defendant Alvarado brought, again in a green laundry hamper, 47 FedEx packages to the FedEx store at 7620 Las Vegas Boulevard South, Las Vegas. These packages were held by FedEx until the following day.

On July 25, 2012, agents executed a federal search warrant at 11155 Granting Landing Court. Each of the defendants was in the premises at the time. In its basement investigators discovered bags of damiana, which is base product used in the distribution of spice, rolls of labels including "Mad Pineapple" and "Tiger Blood" stickers that could be placed on packets, a large supply of packets, and baking pans containing substances drying outside in courtyard. Substances recovered from this basement which were tested by a forensic chemist included the following: (a) 1012 grams of JWH-250, a synthetic cannabinoid and Schedule I controlled substance, (b) 983 grams of RCS-4, a synthetic cannabinoid and a Schedule I controlled substance, and (c) inside drawers with a cup, 349 grams of alpha-PVP, a synthetic cathinone and controlled substance analogue of MDPV at the time. Beside the drawers in the basement agents located a green hamper and, in the office portion of the basement, a April 23, 2012 letter from a Philadelphia U.S. Postal Inspector advising that the certain components of bath salts, including MDPV, had been emergency scheduled, and the use of the U.S Postal Service as a means to traffic controlled substances was a violation of federal law. Indicia relating to operation of thesupplyboys.com website were found in the office area of the basement, and, as identified in the forfeiture allegations of the Third Superseding Indictment, items purchased with the proceeds of such sales were found in the premises.

At the time of this search, after waiving his Miranda rights, co-defendant Alvarado provided agents written consent to search the 47 packages he had delivered to the FedEx office the day before. Sample of the packages in these FedEx packages revealed packets labeled Tiger Blood which contained alpha-PVP, and packets labeled New Ivory Wave which contained alpha-PVP.

1      Co-defendant Haardt told agents after waiving her Miranda rights, that, as far as she knew,

2 Collado, Riley, Alvarado, and Fisher do the day to day operations of JMR Enterprises, and that the

3 products they sold were for customers to get high, which was why customers paid so much.

4      Co-defendant Fisher made a post-Miranda statement that he was hired and paid by Riley, he

5 picked up packages for JMR Enterprises at the UPS store on Southern Highlands Parkway, and that he

6 assisted with batch-making of the products.  Fisher stated that defendant Collado handled advertising

7 on thesupplyboys.com website.  According to UPS records, defendant Collado had opened the private

8 mail box #401, at the UPS store on Southern Highlands Parkway.

9      On July 25, 2012, a federal search warrant was executed on private mailbox #401, the UPS

10 Store, 10620 Southern Highlands Parkway, Suite 110, Las Vegas, Nevada, where agents located

11 packages addressed to JMR Enterprises.  Defendants Collado, Riley, Haardt, and Fisher were familiar

12 to UPS employees working there in terms of picking up mail from that location.  Some of these

13 packages seized from mailbox #401 contained packets labeled New Ivory Wave, Tiger Blood, and

14 Mad Max.  Samples of the substances in those packets, as tested by a chemist, revealed the presence of

15 UR-144 and/or XLR11, each of which at the time was a controlled substance analogue of JWH-018, a

16 schedule I controlled substance; or alpha-PVP, a controlled substance analogue of MDPV.

17      The defendant admits that he knew the synthetic cannabinoids and synthetic cathinones sold by

18 JMR Enterprises, including product in packages labeled Mad Pineapple, Tiger Blood, New Ivory

19 Wave, and Mad Max, were intended for human consumption.  The defendant acknowledges that the

20 chemical structure of UR-144, XLR11, and AM2201 are substantially similar to that of JWH-018; and

21 that each has a hallucinogenic effect on the central nervous system that is substantially similar to or

22 greater than the hallucinogenic effect on the central nervous system of JWH-018.

23      The defendant acknowledges that the chemical structure of alpha-PVP is substantially similar

24 to that of the Schedule I controlled substance MDPV, and has a hallucinogenic effect on the central

1   nervous system that is substantially similar to or greater than the hallucinogenic effect on the central

2   nervous system of the MDPV.

3       Finally, during the search of 11155 Grants Landing Court, but in an area unrelated to the

4   controlled substances and controlled substance analogues in the basement, investigators recovered two

5   firearms, a Taurus "The Judge" revolver, 410 GA / .45 caliber, bearing serial number # ES423236, and

6   5 Remington 410 gauge shells; and a Smith & Wesson .357 revolver, model 6502, bearing serial

7   number AUN0490, and 6 Winchester .357 cartridges that were not owned by the defendant.  The

8   parties agree that these firearms and ammunition therefor were not possessed in relationship to the

9   foregoing offense, but agree that, along with jewelry, precious metals, coins, currency, and other items

10  found in the premises, they may be subject to forfeiture as proceeds of the distribution of controlled

11  substances, and controlled substance analogues intended for human consumption, and conspiracy to

12  commit the same.

13      The defendant admits that the following assets are: 1) any property constituting, or derived

14  from, any proceeds obtained, directly or indirectly, as a result of violations of Title 21, United States

15  Code, Sections 802(32)(A), 813, 841(a)(1) and (b)(1)(C), and 846 and is subject to forfeiture pursuant

16  to Title 21, United States Code, Section 853(a)(1) and (p); and 2) any property used, or intended to be

17  used, in any manner or part, to commit, or to facilitate the commission of violations of Title 21, United

18  States Code, Sections 802(32)(A), 813, 841(a)(1) and (b)(1)(C), and 846 and is subject to forfeiture

19  pursuant to Title 21, United States Code, Section 853(a)(2):

20  Seizure #: 2012272200013201

21      1.      10 count 10 ounce yellow colored (gold) bars Pamp Suisse @ $161,400.00;

22      2.      1 count 100 ounce yellow colored (gold) bar @ $161,400.00;

23      3.      16 count 1 ounce yellow colored (gold) coins @ $25,824.00;

24      4.      2 count white colored (silver) coins @ $200.00;

8

5.     8 count 10 ounce yellow colored (gold) coins Scotiabank @ $12,912.00;

6.     10 count 1 ounce white colored (palladium) bar @ $1575.00;

7.     4 ounces of yellow colored (gold) pellets @ $6456.00;

8.     1 count yellow/white David Yurman watch @ $2500.00;

9.     1 count yellow Rolex watch with white stones @ $10,000.00;

10.    1 count yellow colored (gold) medallion & necklace @ $2,200.00;

11.    11 count Western Union Money Orders @ $5825.00;

12.    9 count Moneygram Money Orders @ $3971.00;

13.    5 count U.S. Postal Money Orders @ $3011.00;

14.    2 count Rouse's Money Orders @ $377.00;

15.    1 count unidentified Money Order @ $553.96;

16.    1 count unidentified check @ $10,000.00;

17.    3 count Capital One Cashier's Checks @ $3,000.00;

18.    1 Taurus "The Judge" Revolver, 410 GA / .45 LC, Serial # ES 423236;

19.    5 Remington 410 Gauge Shells;

20.    1 Smith & Wesson .357 Revolver, Model 65-2, Serial # AUN0490;

21.    6 Winchester .357 Bullets;

Seizure # 2012272200013301

22.    1 count 1 ounce yellow colored (gold) coin Scotiabank @ $1614.00;

23.    6 count 1 ounce white colored (silver) coins @ $162.00;

Seizure #: 2012272200014401

24.    Funds held in Wells Fargo Bank account number 3778869192 (Joshua M. Riley / JMR Enterprises) @ $676,531.10;

...

Seizure #: 2012272200014301

25.     Funds held in US Bank account number 2-537-5271-5834 (Joshua M. Riley) @ $175.00;

26.     Funds held is US Bank account number 1-537-5497-5073 (Joshua M. Riley) @ $105,464.84;

Seizure #: 2012272200014701

27.     Funds held in Nevada Title Company escrow account number 12-07-0556 @ $20,000.00;

Seizure #: 2013272200000201

28.     2 count Western Union Money Orders @ $630.00;

29.     3 count Western Union Money Orders @ $2207.00;

30.     1 count U.S. Postal Money Order @ $349.00;

31.     1 count Moneygram Money Order @ $367.00;

32.     2 count Moneygram Money Orders @ $1259.00;

33.     1 count Moneygram Money Order @ $349.00;

and;

34.     The real property having the address of 2120 Ramrod Avenue #1927, Henderson, Nevada.  The legal description of this property is included below:

PARCEL I:
UNIT 1927 ("UNIT") IN BUILDING 19 ("BUILDING") AS SHOWN ON THE FINAL PLAT OF BROADSTONE GREEN VALLEY CONDOMINIUMS FILED IN BOOK 135 OF PLATS, PAGE 40, IN THE OFFICIAL RECORDS OF THE COUNTY RECORDER, CLARK COUNTY, NEVADA ("PLAT"), AND AMENDED BY CERTIFICATE OF AMENDMENT RECORDED FEBRUARY 16, 2007 IN BOOK 20070216 AS DOCUMENT NO. 03588 AND AS DEFINED AND SET FORTH IN AND SUBJECT TO THAT CERTAIN DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR SOLEVITA CONDOMINIUMS, (FORMERLY KNOWN AS BROADSTONE GREEN VALLEY CONDOMINIUMS), RECORDED APRIL 4, 2007 AS INSTRUMENT NO. 02601 IN BOOK 20070404, OFFICIAL RECORDS, CLARK COUNTY, NEVADA ("SOLEVITA CONDOMINIUMS DECLARATION").

...

PARCEL II:
TOGETHER WITH AN UNDIVIDED ALLOCATED FRACTIONAL INTEREST IN AND TO THE GENERAL COMMON ELEMENTS, AS SET FORTH IN, AND SUBJECT TO, THE PLAT AND THE SOLEVITA CONDOMINIUMS (FORMERLY KNOWN AS BROADSTONE GREEN VALLEY CONDOMINIUMS DECLARATION).

PARCEL III:
TOGETHER WITH AN EXCLUSIVE INTEREST IN AND TO THOSE LIMITED COMMON ELEMENTS, IF ANY, APPURTENANT TO THE UNIT, AS SET FORTH IN, AND SUBJECT TO, THE PLAT AND THE SOLEVITA CONDOMINIUMS (FORMERLY KNOWN AS BROADSTONE GREEN VALLEY CONDOMINIUMS DECLARATION).

PARCEL IV:
TOGETHER WITH A NON-EXCLUSIVE EASEMENT OF REASONABLE INGRESS TO AND EGRESS FROM THE UNIT, AND OF ENJOYMENT OF THE GENERAL COMMON ELEMENTS, AS SET FORTH IN, AND SUBJECT TO, THE PLAT AND THE SOLEVITA CONDOMINIUMS (FORMERLY KNOWN AS BROADSTONE GREEN VALLEY CONDOMINIUMS DECLARATION).

(APN: 161-32-321-295).

and;

35.    a 2012 Cadillac CTS, vehicle identification number (VIN) 1G6DP5E30C0131689

(all of which constitutes "property").

## V.    COLLATERAL USE OF FACTUAL ADMISSIONS

The facts set forth in Section IV of this Plea Agreement shall be admissible against the defendant under Fed. R. Evid. 801(d)(2)(A) at sentencing for any purpose.  If the defendant does not plead guilty or withdraws his guilty plea, the facts set forth in Section IV of this Plea Agreement shall be admissible at any proceeding, including a trial, for impeaching or rebutting any evidence, argument or representation offered by or on the defendant's behalf.  The defendant expressly waives all rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 regarding the use of the facts set forth in Section IV of this Plea Agreement.

...

11

1  **VI.    APPLICATION OF SENTENCING GUIDELINES PROVISIONS**

2      A.    <u>Discretionary Nature of Sentencing Guidelines</u>.  The defendant acknowledges that the

3  Court must consider the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") in

4  determining the defendant's sentence, but that the Sentencing Guidelines are advisory, not mandatory,

5  and the Court has discretion to impose any reasonable sentence up to the maximum term of

6  imprisonment permitted by statute.

7      B.    <u>Offense Level Calculations</u>.  The parties stipulate to the following calculation of the

8  defendant's offense level under the Sentencing Guidelines, acknowledge that these stipulations do not

9  bind the Court, and agree that they will not seek to apply any other specific offense characteristics,

10  enhancements or reductions than those set forth in this Plea Agreement:

11      Count 1:    Conspiracy to Possess with Intent to Distribute and Distribute
                a Controlled Substance and Controlled Substance Analogue,
12                in violation of 21 U.S.C §§ 802(32)(A), 813, 841(a)(1) and (b)(1)(C), and 846

13  To calculate Base Offense Level in cases in which controlled substances, and/or controlled substance
    analogues, are not specifically referenced in the Guidelines, *see* USSG 2D1.1, Note 6:

14

15      In a case of a controlled substance that is not specifically referenced in this guideline,
        determine the base offense level using the marijuana equivalency of the *most closely related*
        controlled substance referenced in this Guideline.

16

17      In determining the most closely related controlled substance referenced in this guideline, the
        court shall, to the extent practicable, consider the following:

18          1.  Whether the controlled substance not referenced in this guidelines has a chemical
                structure that is substantially similar to a controlled substance reference in this
19              guideline;

20          2.  Whether the controlled substance not referenced in this guideline has a stimulant,
                depressant, or hallucinogenic effect on the central nervous system that is
21              substantially similar to the stimulant, depressant, or hallucinogenic effect on the
                central nervous system of a controlled substance referenced in this guideline; and

22

23          3.  Whether a lesser or greater quantity of the controlled substance not referenced in
                this guidelines is needed to produce a substantially similar effect on the central
                nervous system as a controlled substance referenced in this guideline.

24

Alpha-PVP at the time was an analogue of MDPV

MDPV was a Schedule I controlled substance, but a drug not referenced in the Guidelines.

MDPV is most closely related to methcathinone, a drug listed in the Drug Equivalency Table, Note 8 to USSG 2D1.1

*1 gram of methcathinone = 380 grams of marijuana*

XLR-11, UR-144, and AM2201 at the time were analogues of JWH-018

JWH-018 is a Schedule I controlled substance, but not a drug referenced in the Guidelines.

JWH-018 is most closely related to synthetic tetrahydrocannabinol (THC)

Synthetic THC is a drug listed in the Drug Equivalency Table, Note 8 to USSG 2D1.1

*1 gram of tetrahydrocannabinol (synthetic or organic) = 167 grams of marijuana*

To apply actual weight recovered, *see* net weights in attached Exhibit 1 hereto.

*Parties stipulate to a base offense level applicable*
*for the substances is 700 to 1000 kilograms of marijuana (USSG 2D1.1(c)(5))[1]  =*     30

Reductions, subject to Court's findings:

Safety-valve eligibility,
USSG 5C1.2(a)(1) – (5), USSG 2D1.1(b)(16)     -2

Anticipated reduction to base offense levels in Amendments to Guidelines     -2

Acceptance of Responsibility.
*See* USSG 3E1.1     -3

Group (package) plea, *United States v. Caro,* 992 F.2d 657 (9th Cir. 1993)     -2

Adjusted Offense Level     21

---

[1] The actual conversion is 1034.56 kilograms of marijuana equivalency; however, the parties recognize a margin of error that brings it to the range of 700 to 1000 kilograms of marijuana equivalency.  See Exhibit 1 attached hereto for conversion.

13

The defendant acknowledges that the statutory maximum sentence limits the Court's discretion in determining the defendant's sentence notwithstanding any applicable Sentencing Guidelines provisions.

C.      Reduction of Offense Level for Acceptance of Responsibility. Under USSG 3E1.1(a), the United States will recommend that the defendant receive a two-level downward adjustment for acceptance of responsibility unless he (a) fails to truthfully admit facts establishing a factual basis for the guilty plea when he enters the plea; (b) fails to truthfully admit facts establishing the amount of restitution owed when he enters his guilty plea; (c) fails to truthfully admit facts establishing the forfeiture allegations when he enters his guilty plea; (d) provides false or misleading information to the United States, the Court, Pretrial Services, or the Probation Office; (e) denies involvement in the offense or provides conflicting statements regarding his involvement or falsely denies or frivolously contests conduct relevant to the offense; (f) attempts to withdraw his guilty plea; (g) commits or attempts to commit any crime; (h) fails to appear in court; or (i) violates the conditions of pretrial release.

Under USSG 3E1.1(b), the United States will move for an additional one-level downward adjustment for acceptance of responsibility before sentencing because the defendant communicated his decision to plead guilty in a timely manner that enabled the United States to avoid preparing for trial and to efficiently allocate its resources.

D.      Defendant May Argue for a 2-Level Reduction under USSG 2D1.1(b)(16).

The defendant reserves the right to argue that he meets the conditions set forth in USSG 5C1.2(a) ("safety-valve eligibility") to qualify for a 2-level reduction in his Offense Level under USSG 2D1.1(b)(16). The determination whether the defendant meets all the conditions set forth in USSG 5C1.2(a) rests solely with the Court, and the decision the Court reaches is not grounds upon which the defendant may withdraw his plea of guilty.

14

E.   Parties' Waivers as to Defendant's Role in Offense (USSG 3B1.1/3B1.2).

The defendant waives his right to argue for a reduction in his offense level pursuant to USSG 3B1.2, Mitigating Role, and in exchange, the government waives its right to argue for any enhancement in his offense level pursuant to USSG 3B1.1. The parties understand that the decision whether to enhance or reduce the defendant's offense level on grounds of his role under USSG 3B1.1 or USSG 3B1.2 (or to do neither) rests solely with the Court.

F.   No Other Known Adjustments Under Chapters Two & Three of Sentencing Guidelines.

The parties are not aware of any other enhancements or reductions under Chapters Two and Three of the Sentencing Guidelines which apply to the defendant for sentencing in this case and, as such, agree not to argue for the application for any other enhancements or reductions than those set forth in this Plea Agreement.

G.   Criminal History Category. The defendant acknowledges that the Court may base his sentence in part on the defendant's criminal record or criminal history. The Court will determine the defendant's Criminal History Category under the Sentencing Guidelines.

H.   Relevant Conduct. The Court may consider any counts dismissed under this Plea Agreement and all other relevant conduct, whether charged or uncharged, in determining the applicable Sentencing Guidelines range and whether to depart from that range.

I.   Additional Sentencing Information. The stipulated Sentencing Guidelines calculations are based on information now known to the parties. The parties may provide additional information to the United States Probation Office and the Court regarding the nature, scope, and extent of the defendant's criminal conduct and any aggravating or mitigating facts or circumstances. Good faith efforts to provide truthful information or to correct factual misstatements shall not be grounds for the defendant to withdraw his guilty plea.

15

1      The defendant acknowledges that the United States Probation Office may calculate the

2  Sentencing Guidelines differently and may rely on additional information it obtains through its

3  investigation.  The defendant also acknowledges that the Court may rely on this and other additional

4  information as it calculates the Sentencing Guidelines range and makes other sentencing

5  determinations, and the Court's reliance on such information shall not be grounds for the defendant to

6  withdraw his guilty plea.

7      J.     Attorney General Directive.  In light of the United States Sentencing Commission's

8  proposed amendment to lower the base offense level for all drug offenses by two levels, the

9  government agrees to recommend a two-level downward variance to the defendant's base offense

10  level.  In exchange for this recommendation, the defendant agrees not to seek, and expressly waives

11  the right to seek, a further reduced sentence, pursuant to Title 18, United States Code, Section

12  3582(c)(2), in the event that the two-level reduction is adopted and made retroactive by the Sentencing

13  Commission.

14  **VII.   APPLICATION OF SENTENCING STATUTES**

15      A.    Maximum Penalty.  The maximum penalty for Conspiracy to Possess with Intent to

16  Distribute and Distribution of a Controlled Substance and Controlled Substance Analogue under 21

17  U.S.C. §§ 802(32)(A), 813, 841(a)(1) and (b)(1)(C), and 846, is a prison sentence of 20 years, a fine of

18  $1,000,000, or both.

19      B.    Factors Under 18 U.S.C. § 3553.  The Court must consider the factors set forth in 18

20  U.S.C. § 3553(a) in determining the defendant's sentence.  However, the statutory maximum sentence

21  limits the Court's discretion in determining the defendant's sentence.

22      C.    Additional Mandatory Sentencing Provisions.  There is no mandatory minimum

23  sentence that must be imposed by statute in this case.

24      D.    Parole Abolished.  The defendant acknowledges that his prison sentence cannot be

16

1 | shortened by early release on parole because parole has been abolished.

2 |       E.    <u>Supervised Release</u>.  In addition to imprisonment and a fine, the defendant will be
3 | subject to a term of supervised release of *at least* 3 years.  21 U.S.C. § 841(b)(1)(C).  Supervised
4 | release is a period of time after release from prison during which the defendant will be subject to
5 | various restrictions and requirements.  If the defendant violates any condition of supervised release,
6 | the Court may order the defendant's return to prison for all or part of the term of supervised release,
7 | which could result in the defendant serving a total term of imprisonment greater than the statutory
8 | maximum prison sentence of 20 years.

9 |       F.    <u>Special Assessment</u>.  The defendant will pay a $100.00 special assessment at the time
10 | of sentencing.

11 | **VIII.  POSITIONS REGARDING SENTENCE**

12 |       The United States will recommend that the Court sentence the defendant within the low-end of
13 | the applicable Sentencing Guidelines range as determined by the Court, unless the defendant commits
14 | any act that could result in a loss of the downward adjustment for Acceptance of Responsibility, or if
15 | the defendant argues for a sentence below the Sentencing Guidelines range as calculated in this Plea
16 | Agreement pursuant to factors set forth in 18 U.S.C. § 3553(a).  The defendant acknowledges that the
17 | Court does not have to follow that recommendation.

18 |       The defendant reserves the right to argue pursuant to the sentencing factors set forth under 18
19 | U.S.C. § 3553(a) for a sentence that is below the Sentencing Guidelines range as calculated in this
20 | Plea Agreement, but in the event he does, the government is not bound to recommend the low-end of
21 | the application Sentencing Guidelines range as determined by the Court.  In any event, the government
22 | will recommend a sentence that is within the Sentencing Guidelines range as determined by the Court.

23 |       The defendant will <u>not</u> seek a downward adjustment pursuant to any provision of the
24 | Sentencing Guidelines other than those reserved in this Plea Agreement.

17

The United States reserves its right to defend any lawfully imposed sentence on appeal or in any post-conviction litigation.

**IX.   RESTITUTION**

The parties do not believe that restitution is warranted in this case, but the parties understand that such a determination rests solely with the Court pursuant to 18 U.S.C. § 3556.

**X.   FORFEITURE**

The defendant knowingly and voluntarily:

A.     Agrees to the abandonment, the civil administrative forfeiture, the civil judicial forfeiture, or the criminal forfeiture of the following property pursuant to Title 21, United States Code, Section 853(a)(1), (a)(2), and (p):

Seizure #: 2012272200013201

1.      10 count 10 ounce yellow colored (gold) bars Pamp Suisse @ $161,400.00;

2.      1 count 100 ounce yellow colored (gold) bar @ $161,400.00;

3.      16 count 1 ounce yellow colored (gold) coins @ $25,824.00;

4.      2 count white colored (silver) coins @ $200.00;

5.      8 count 10 ounce yellow colored (gold) coins Scotiabank @ $12,912.00;

6.      10 count 1 ounce white colored (palladium) bar @ $1575.00;

7.      4 ounces of yellow colored (gold) pellets @ $6456.00;

8.      1 count yellow/white David Yurman watch @ $2500.00;

9.      1 count yellow Rolex watch with white stones @ $10,000.00;

10.     1 count yellow colored (gold) medallion & necklace @ $2,200.00;

11.     11 count Western Union Money Orders @ $5825.00;

12.     9 count Moneygram Money Orders @ $3971.00;

13.     5 count U.S. Postal Money Orders @ $3011.00;

18

14. 2 count Rouse's Money Orders @ $377.00;

15. 1 count unidentified Money Order @ $553.96;

16. 1 count unidentified check @ $10,000.00;

17. 3 count Capital One Cashier's Checks @ $3,000.00;

18. 1 Taurus "The Judge" Revolver, 410 GA / .45 LC, Serial # ES 423236;

19. 5 Remington 410 Gauge Shells;

20. 1 Smith & Wesson .357 Revolver, Model 65-2, Serial # AUN0490;

21. 6 Winchester .357 Bullets;

Seizure # 2012272200013301

22. 1 count 1 ounce yellow colored (gold) coin Scotiabank @ $1614.00;

23. 6 count 1 ounce white colored (silver) coins @ $162.00;

Seizure #: 2012272200014401

24. Funds held in Wells Fargo Bank account number 3778869192 (Joshua M. Riley / JMR Enterprises) @ $676,531.10;

Seizure #: 2012272200014301

25. Funds held in US Bank account number 2-537-5271-5834 (Joshua M. Riley) @ $175.00;

26. Funds held is US Bank account number 1-537-5497-5073 (Joshua M. Riley) @ $105,464.84;

Seizure #: 2012272200014701

27. Funds held in Nevada Title Company escrow account number 12-07-0556 @ $20,000.00;

Seizure #: 2013272200000201

28. 2 count Western Union Money Orders @ $630.00;

29. 3 count Western Union Money Orders @ $2207.00;

30. 1 count U.S. Postal Money Order @ $349.00;

31. 1 count Moneygram Money Order @ $367.00;

19

32.   2 count Moneygram Money Orders @ $1259.00;

33.   1 count Moneygram Money Order @ $349.00;

and;

34.   The real property having the address of 2120 Ramrod Avenue #1927, Henderson, Nevada. The legal description of this property is included below:

PARCEL I:
UNIT 1927 ("UNIT") IN BUILDING 19 ("BUILDING") AS SHOWN ON THE FINAL PLAT OF BROADSTONE GREEN VALLEY CONDOMINIUMS FILED IN BOOK 135 OF PLATS, PAGE 40, IN THE OFFICIAL RECORDS OF THE COUNTY RECORDER, CLARK COUNTY, NEVADA ("PLAT"), AND AMENDED BY CERTIFICATE OF AMENDMENT RECORDED FEBRUARY 16, 2007 IN BOOK 20070216 AS DOCUMENT NO. 03588 AND AS DEFINED AND SET FORTH IN AND SUBJECT TO THAT CERTAIN DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR SOLEVITA CONDOMINIUMS, (FORMERLY KNOWN AS BROADSTONE GREEN VALLEY CONDOMINIUMS), RECORDED APRIL 4, 2007 AS INSTRUMENT NO. 02601 IN BOOK 20070404, OFFICIAL RECORDS, CLARK COUNTY, NEVADA ("SOLEVITA CONDOMINIUMS DECLARATION").

PARCEL II:
TOGETHER WITH AN UNDIVIDED ALLOCATED FRACTIONAL INTEREST IN AND TO THE GENERAL COMMON ELEMENTS, AS SET FORTH IN, AND SUBJECT TO, THE PLAT AND THE SOLEVITA CONDOMINIUMS (FORMERLY KNOWN AS BROADSTONE GREEN VALLEY CONDOMINIUMS DECLARATION).

PARCEL III:
TOGETHER WITH AN EXCLUSIVE INTEREST IN AND TO THOSE LIMITED COMMON ELEMENTS, IF ANY, APPURTENANT TO THE UNIT, AS SET FORTH IN, AND SUBJECT TO, THE PLAT AND THE SOLEVITA CONDOMINIUMS (FORMERLY KNOWN AS BROADSTONE GREEN VALLEY CONDOMINIUMS DECLARATION).

PARCEL IV:
TOGETHER WITH A NON-EXCLUSIVE EASEMENT OF REASONABLE INGRESS TO AND EGRESS FROM THE UNIT, AND OF ENJOYMENT OF THE GENERAL COMMON ELEMENTS, AS SET FORTH IN, AND SUBJECT TO, THE PLAT AND THE SOLEVITA CONDOMINIUMS (FORMERLY KNOWN AS BROADSTONE GREEN VALLEY CONDOMINIUMS DECLARATION).

(APN: 161-32-321-295).

and;

     35.    a 2012 Cadillac CTS, vehicle identification number (VIN) 1G6DP5E30C0131689 (all of which constitutes "property").

     B.    Abandons or forfeits the property to the United States;

     C.    Relinquishes all right, title, and interest in the property;

     D.    Waives his right to any abandonment proceedings, any civil administrative forfeiture proceedings, any civil judicial forfeiture proceedings, or any criminal forfeiture proceedings of the property ("proceedings");

     E.    Waives service of process of any and all documents filed in this action or any proceedings concerning the property arising from the facts and circumstances of this case;

     F.    Waives any further notice to him, him agents, or him attorney regarding the abandonment or the forfeiture and disposition of the property;

     G.    Agrees not to file any claim, answer, petition, or other documents in any proceedings concerning the property;

     H.    Waives the statute of limitations, the Civil Asset Forfeiture Reform Act ("CAFRA") requirements, Fed. R. Crim. P. 7 and 32.2, the constitutional requirements, and the constitutional due process requirements of any proceedings concerning the property;

     I.    Waives his right to a jury trial on the forfeiture of the property;

     J.    Waives all constitutional, legal, and equitable defenses to the forfeiture or abandonment of the property in any proceedings, including but not limited to (1) constitutional or statutory double jeopardy defenses; and (2) defenses under the Excessive Fines or Cruel and Unusual Punishments Clauses of the Eighth Amendment to the United States Constitution;

     K.    Agrees to the entry of an Order of Forfeiture of the property to the United States;

     L.    Agrees that forfeiture is immediately due and payable and subject to immediate

1   collection by the United States;

2       M.      Agrees and understands the abandonment, the civil administrative forfeiture, the civil

3   judicial forfeiture, or the criminal forfeiture of the property shall not be treated as satisfaction of any

4   assessment, fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon

5   the defendant in addition to the abandonment or the forfeiture; and

6       N.      The defendant acknowledges that the amount of the forfeiture may differ from, and

7   may be significantly greater than, the amount of restitution.

8       O.      The defendant agrees to withdraw his claims with respect to the civil forfeiture actions,

9   docketed in this Court as 2:12-CV-(SEALED) and 2:13-CV-(SEALED). After the property is forfeited

10  in the civil and criminal cases and the United States District Court has signed the Final Order of

11  Forfeiture concerning all of the forfeited property, within a practicable time thereafter for the United

12  States, the United States agrees to release to the defendant, Joshua Michael Riley, the value of fifteen

13  percent (15%) of the assets that are identified and described in paragraph No. X (A), item numbers 1-

14  35 of this plea agreement (forfeited assets) in the form of a negotiable and guaranteed monetary

15  instrument. The defendant acknowledges and understands that many of the forfeited assets are

16  presently in non-liquid, non-negotiable, non-divisible form and that, once the Final Order of Forfeiture

17  has been signed by this Court, the United States Marshal Service will assume the responsibility of

18  promptly disposing of those assets, in a manner consistent with its practices, and reducing the assets to

19  a liquid monetary form that can be divided on a percentage basis and distributed to the defendant on a

20  85/15 split, as specified above, with fifteen percent of the value of those liquid assets being

21  surrendered to the defendant less any debt owed to the United States, any agency of the United States,

22  or any debt in which the United States is authorized to collect, through his counsel.  Defendant

23  knowingly and voluntarily agrees to fill out the Department of the United States Treasury Automated

24  Clearing House ("ACH") form accurately and correctly and submit it to the United States Attorney's

22

1   Office so that the payment of the money can be disbursed by electronic fund transfer. Defendant

2   knowingly and voluntarily agrees that the amount surrendered by the Government to the defendant

3   under the terms of this plea agreement may be offset by any debt owed to the United States, any

4   agency of the United States, or any debt in which the United States is authorized to collect.

5         P.      Each co-defendant named in this criminal prosecution, docketed as 2:12-CR-478-JCM-

6   VCF, specifically, Joshua Michael Riley, Nicholas Collado, Marco Daniel Alvarado, Jacob Fisher and

7   Alexandra Haardt, acknowledges with the execution of his or her own separate and individual plea

8   agreement that the government distribution of fifteen-percent of the forfeited assets to the defendants, as

9   a condition of the consummation of this plea agreement, applies to the defendants jointly and

10   collectively and not separately. In other words, with his or her signature on this respective plea

11   agreement, each defendant is individually resolving both the criminal and the related civil forfeiture

12   actions (docketed as 2:12-CV-(SEALED) and 2:13-CV-(SEALED)) and that the limitation of any and

13   all disbursements that the Government makes to any or all of the defendants, with respect to the

14   resolution of both the civil cases and the criminal case, collectively, is fifteen-percent total; and that the

15   defendants shall determine without government involvement, the recipient(s) of that fifteen percent

16   governmental disbursement.

17   **XI.**     **FINANCIAL INFORMATION AND DISPOSITION OF ASSETS**

18         Before or after sentencing, upon request by the Court, the United States, or the Probation

19   Office, the defendant will provide accurate and complete financial information, submit sworn

20   statements, and/or give depositions under oath concerning his assets and his ability to pay. The

21   defendant will surrender assets he obtained directly or indirectly as a result of his crimes, and will

22   release funds and property under his control in order to pay any fine, forfeiture, or restitution ordered

23   by the Court.

24   ...

23

## XII.   THE DEFENDANT'S ACKNOWLEDGMENTS AND WAIVERS

A.   <u>Plea Agreement and Decision to Plead Guilty</u>.  The defendant acknowledges that:

(1)   He has read this Plea Agreement and understands its terms and conditions;

(2)   He has had adequate time to discuss this case, the evidence, and this Plea Agreement with his attorney;

(3)   He has discussed the terms of this Plea Agreement with his attorney;

(4)   The representations contained in this Plea Agreement are true and correct, including the facts set forth in Section IV; and

(5)   He was not under the influence of any alcohol, drug, or medicine that would impair his ability to understand the Agreement when he considered signing this Plea Agreement and when he signed it.

The defendant understands that he alone decides whether to plead guilty or go to trial, and acknowledges that he has decided to enter his guilty plea knowing of the charges brought against him, his possible defenses, and the benefits and possible detriments of proceeding to trial.  The defendant also acknowledges that he decided to plead guilty voluntarily and that no one coerced or threatened him to enter into this Plea Agreement.

A.   <u>Waiver of Appeal and Post-Conviction Proceedings</u>.  The defendant knowingly and expressly waives: (a) the right to appeal any sentence imposed within or below the applicable Sentencing Guideline range as determined by the Court; (b) the right to appeal the manner in which the Court determined that sentence on the grounds set forth in 18 U.S.C. § 3742; and (c) the right to appeal any other aspect of the conviction or sentence and any order of restitution or forfeiture.

The defendant also knowingly and expressly waives all collateral challenges, including any claims under 28 U.S.C. § 2255, to his conviction, sentence, and the procedure by which the Court

adjudicated guilt and imposed sentence, except non-waivable claims of ineffective assistance of counsel.

The defendant reserves only the right to appeal any portion of the sentence that is greater than the Sentencing Guidelines range as determined by the Court.

The defendant acknowledges that the United States is not obligated or required to preserve any evidence obtained in the investigation of this case.

## XIII.   ADDITIONAL ACKNOWLEDGMENTS

This Plea Agreement resulted from an arms-length negotiation in which both parties bargained for and received valuable benefits in exchange for valuable concessions.  It constitutes the entire agreement negotiated and agreed to by the parties.  No promises, agreements or conditions other than those set forth in this agreement have been made or implied by the defendant, the defendant's attorney, or the United States, and no additional promises, agreements or conditions shall have any force or effect unless set forth in writing and signed by all parties or confirmed on the record before the Court.

DANIEL G. BOGDEN
United States Attorney

DATE _6/20/14_  _7/24/14_

JAMES E. KELLER
Assistant United States Attorney

DATE _7/24/14_

GABRIEL GRASSO, Esq.
Counsel for the Defendant

DATE _7/24/2014_

NICHOLAS COLLADO
Defendant

**_Exhibit 1_**

_United States v. Joshua Riley, et al., drug calculations:_

DEA Ex # / DEA case # / Substance / Net Amount / Where / Most Closely Related Listed Substance

Ex 1 – case # 2007 -        Alpha-PVP – 1491 grams – imported from China = MDPV = methcathinone

Ex 1 – case # 0092        AM2201 – 1.3 g net weight – sold to UC = synthetic THC

Ex 2 – case #0092        Alpha-PVP -- .59 grams – sold to UC = MDPV = methcathinone

Ex 49.01 – case #0137        Alpha PVP -- .47grams – FedEx - MDPV = methcathinone

Ex 49.02 – case #0137        Alpha PVP - .47 grams - FedEx - MDPV = methcathinone

Ex 53 – case #0137        Alpha-PVP – .63 grams = MDPV = methcathinone

Ex 1.01 – case #0002        UR-144/XLR11 - .31 grams – UPS mailbox 401 = synthetic THC

Ex 1.02 – case #0002        UR-144/XLR11 - .35 grams - UPS mailbox 401  = synthetic THC

Ex 1.03 – case #0002        UR-144/XLR11 - .27 grams - UPS mailbox 401 = synthetic THC

Ex 1.04 – case # 0002        UR-144/XLR11 - .41 grams - UPS mailbox 401  = synthetic THC

Ex 2.01 – case #0002        Alpha-PVP - .46 grams - UPS mailbox 401 = MDPV = methcathinone

Ex 2.02 – case #0002        Alpha-PVP - .58 grams - UPS mailbox 401 = MDPV = methcathinone

Ex 3 – case #-0002        Alpha-PVP - .53 grams - UPS mailbox 401 = MDPV = methcathinone

Ex 121 – case #0132        JWH-250 – 1012 grams – 11155 Grants Landing = synthetic THC

Ex 122 – case #0132        RCS-4 – 983.5 grams – 11155 Grants Landing = synthetic THC

Ex 128 – case #1032        Alpha-PVP – 38.5 grams = MDPV = methcathinone

Ex 129 – case #1032        Alpha-PVP – 52.6 grams = MDPV = methcathinone

Ex 130 – case #1032        Alpha-PVP – 176.3 grams = MDPV = methcathinone

Ex 140 – case #0132        Alpha-PVP – 81.7 grams = MDPV = methcathinone

*See Drug Equivalency Table, Application Note 8(D) to USSG 2D1.1(c)*

<u>As to alpha-PVP</u>

- 1 gram of Methcathinone = 380 grams of marijuana

In this case, we have:

- 1491 grams alpha-PVP in package addressed to Nick Collado
- .59 grams alpha-PVP sold to UC
- 1.57 grams alpha-PVP from those FedEx packages in which substances were tested
- 1.57 grams alpha-PVP from those UPS packages in which substances were tested
- 349.1 grams alpha-PVP from 11155 Grants Landing Court

> Total alpha-PVP = 1843.83 grams
> x 380
> = *700,655 grams of marijuana equivalency*

<u>As to JWH-250, RCS-4, UR-144/XLR11/AM2201</u>

- 1 grams of synthetic THC = 167 grams of marijuana

In this case, we have:

- 1012 grams of JWH-250 – 11155 Grants Landing
- 983.5 grams of RCS-4 – 11155 Grants Landing
- 1.3 grams AM2201 – sold to UC
- 1.34 grams of UR-144/XLR11 in UPS mailbox packages in which substances were tested

Total synthetic cannabinoids tested =   1998.44 grams

x 167

= 333,739.48 grams of marijuana equivalency

700,655 grams marijuana equivalency + 333,739 grams marijuana equivalency =

1,034,394 grams of marijuana equivalency, which is 103 kilograms of marijuana equivalency